UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| DWIGHT S. BREWER,<br><br>    Plaintiff,<br><br>v.<br><br>COASTAL TRANSPORTATION, INC., OMEGA MARINE ELECTRIC, ELEKTRO, INC. and BLUE NORTH FISHERIES, INC.,<br><br>    Defendants. | Case No. C08-5170RJB<br><br>ORDER ON DEFENDANT BLUE NORTH, INC.'S MOTION FOR SUMMARY JUDGMENT OF DISMISSAL |

This matter comes before the court on Defendant Blue North, Inc.'s Motion for Summary Judgment of Dismissal. Dkt. 49. The court has considered the pleadings filed in support of the motion and the file herein.

## PROCEDURAL HISTORY

On March 20, 2008, plaintiff filed a complaint for personal injuries under 33 U.S.C. § 905(b) against Coastal Transportation, Inc. (Coastal), the owner of the vessel COASTAL NOMAD. Dkt. 1. Plaintiff later filed a Third Amended Complaint, asserting claims for personal injuries under 33 U.S.C. § 905(b) and under general maritime law. Dkt. 29. The Third Amended Complaint added Omega Marine Electric (Omega), Elektro, Inc. (Electro), and Blue North Fisheries, Inc. (Blue North) as defendants. Dkt. 29. The Third Amended Complaint alleges that Coastal contracted with Omega, Electro, and Blue North to perform electrical work aboard the COASTAL NOMAD; that, on June 8, 2007, the COASTAL NOMAD was undergoing ship repair at Marine Industries Northwest, Inc. (Marine Industries); that

plaintiff was in the course and scope of his employment; that Coastal was negligent in its capacity as vessel owner; that Omega, Electro, and Blue North were negligent in their capacity as contractors working aboard the COASTAL NOMAD; and that as a direct and proximate result of defendants' negligence, "plaintiff sustained an electrocution injury aboard the vessel COASTAL NOMAD, with resulting chest pain, left upper extremity weakness and discomfort, fatigue and associated psychological and emotional injuries." Dkt. 29, at 1-2.

On June 18, 2009, Blue North filed a motion for summary judgment, contending that (1) Coastal hired Marine Industries to perform an extensive retrofit of the COASTAL NOMAD; (2) Coastal Hired Blue North to perform mechanical work only; (3) Blue North employees did not cut any electrical wires during their work on the vessel, nor did they disconnect any electrical wires or connections during Blue North's work on the vessel; (4) Coastal does not know who cut the wire; and (5) plaintiff does not know who cut the wire. Dkt. 49. Blue North requests that, pursuant to Fed.R.Civ.P. 11, the court award Blue North the fees and costs it incurred in defending against this suit. *Id.* at 12-13.

Neither the plaintiff nor any other defendant filed a response to Blue North's motion for summary judgment. Pursuant to Local Rule CR 7(b)(2), if a party fails to file papers in opposition to a motion, such failure may be considered by the court as an admission that the motion has merit. Accordingly, for purposes of this summary judgment motion, the court has deemed the facts set forth in Blue North's motion to be uncontested.

### RELEVANT FACTS

Coastal owns the vessel COASTAL NOMAD. Dkt. 50-3, at 2. Coastal hired Blue North to perform work associated with the preparation and removal of the main diesel engines and reduction gears, in preparation for the vessel to go to Marine Industries for extensive shipyard work. Dkt. 50-3 at 2.

On March 20, 2007, Coastal turned the COASTAL NOMAD over to Blue North to begin work on the engines and reduction gears. Dkt. 50-3, at 3. The work performed by Blue North took place from March 20-26, 1007. Dkt. 51, at 2.

Andrew S. Williams, Foreman of the Blue North crew, submitted a declaration that sets forth the uncontested facts regarding what happened, or did not happen, while Blue North performed work on the vessel. Dkt. 51.

The work performed by Blue North to prepare the main engines of the COASTAL NOMAD for removal consisted entirely of removing or disassembling mechanical connections such as nuts, bolts, hydraulic couplings, bearings, and the like. Dkt. 51, at 2. In order to accomplish this job, it was not necessary to disconnect any electrical circuitry or remove any electr4ical wires from the main engine or reduction gear. Dkt. 51, at 2.

The main engines of the COASTAL NOMAD had a few alarms and control panels attached to them; this equipment operated on low voltages. Dkt. 51, at 2. Any alarms, control panels, or other electrical devices that had to be removed from the engines were not electrically disconnected; instead, they were unbolted or unscrewed from their attachment points and moved aside while still connected to any wiring to be secured. Dkt. 51, at 2. It was not necessary to disconnect any electrical connections in order to accomplish these tasks. Dkt. 51, at 2. No electrical connections were disconnected during Blue North's work on the vessel. Dkt. 51, at 2. No cut wire was present in the engine room when Mr. Williams completed his final inspection after Blue North finished the work on the vessel. Dkt. 51, at 3.

Blue North completed its portion of the work to be performed on the COASTAL NOMAD, and, on April 24, 2007. Dkt. 50-3, at 3. The COASTAL NOMAD was taken under tow by Western Towboat to Marine Industries in Tacoma, Washington. Dkt. 50-3, at 3. Coastal hired Marine Industries to lengthen the vessel and to perform other extensive overhaul work. The shipyard work occurred between the end o April and the end of June of 2007. Marine Industries delivered the vessel to Coastal on July 3, 2007.

In his complaint, plaintiff contends that he was working at Marine Industries in Tacoma on June 8, 2007; that he sustained an electrocution injury aboard the COASTAL NOMAD; and that the injury was the result of defendants' negligence. Dkt. 29. In his deposition, plaintiff testified that he was doing alignment on the gear box; that he had a 24-inch Cresent [wrench] in his hand; that he reached over the adjustment bolt to move the transmission; that wires were coming out of the ground or out of the deck; and that he somehow touched the wires with his arm. Dkt. 51, at 5. Plaintiff testified that three wires were cut off flush, "like a saw cut them off or something"; that the three wires were contained in one insulation; and that this was sticking up from the deck. Dkt. 51, at 6.

## LEGAL STANDARD

Summary judgment is proper only if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). The moving party is entitled to judgment as a matter of law when the nonmoving party fails to make a sufficient showing on an essential element of a claim in the case on which the nonmoving party has the burden of proof. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1985). There is no genuine issue of fact for trial where the record, taken as a whole, could not lead a rational trier of fact to find for the non moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)(nonmoving party must present specific, significant probative evidence, not simply "some metaphysical doubt."). *See also* Fed.R.Civ.P. 56(e). Conversely, a genuine dispute over a material fact exists if there is sufficient evidence supporting the claimed factual dispute, requiring a judge or jury to resolve the differing versions of the truth. *Anderson v. Liberty Lobby, Inc.*, 477 .S. 242, 253 (1986); *T.W. Elec. Service Inc. v. Pacific Electrical Contractors Association*, 809 F.2d 626, 630 (9th Cir. 1987).

The determination of the existence of a material fact is often a close question. The court must consider the substantive evidentiary burden that the nonmoving party must meet at trial – e.g., a preponderance of the evidence in most civil cases. *Anderson*, 477 U.S. at 254, *T.W. Elect. Service Inc.*, 809 F.2d at 630. The court must resolve any factual issues of controversy in favor of the nonmoving party only when the facts specifically attested by that party contradict facts specifically attested by the moving party. The nonmoving party may not merely state that it will discredit the moving party's evidence at trial, in the hopes that evidence can be developed at trial to support the claim. *T.W. Elect. Service Inc.*, 809 F.2d at 630 (relying on *Anderson, supra)*. Conclusory, non specific statements in affidavits are not sufficient, and "missing facts" will not be "presumed." *Lujan v. National Wildlife Federation*, 497 U.S. 871, 888-89 (1990).

## DISCUSSION

**1. Motion for Summary Judgment**

Blue North Requests that plaintiff's claims against it be dismissed because plaintiff cannot establish that any act of Blue North was the proximate cause of his injury. Dkt. 49, at 12.

The Longshore and Harbor Workers' Compensation Act (Longshore Act) establishes a comprehensive workers' compensation program that provides benefits to longshore workers and their families for work-related injuries. 33 U.S.C. §§ 901-950. Under this act, the longshore worker's employer, the stevedore, is shielded from liability beyond payment of statutory benefits. *See Howlett v. Birkdale Shipping Co., S.A.*, 512 U.S. 92, 96 (1994). Under certain limited circumstances, the longshore worker may seek damages in a statutory negligence action from the owner of the vessel on which he was injured under 33 U.S.C. § 905(b). *Id*. In addition, 33 U.S.C. § 905(b) allows employees to sue a vessel for injuries caused by the negligence of the vessel, just as they may sue other third parties for negligence under § 933. Negligence under maritime law includes the usual elements of duty, breach, injury, cause in fact, and proximate cause. *See In re Cooper/T. Smith*, 929 F.2d 1073, 1077 (5th Cir.1991).

In this case, Blue North has shown that the exposed wire that plaintiff alleges injured him was not present when Blue North completed its work. Plaintiff has not met his burden to show that Blue North either breached a duty to plaintiff or that Blue North caused plaintiff's injury. Blue North has shown that there are no outstanding issues of material fact as to plaintiff's negligence claim against Blue North. Blue North's motion for summary judgment of dismissal should be granted, and plaintiff's claims against Blue North should be dismissed.

**2. Request for Award of Fees and Costs**

Blue North requests that, pursuant to Fed.R.Civ.P. 11, it is entitled to fees and costs in defending against this action. Blue North contends that plaintiff does not have a good faith basis for his continued prosecution of this action.

Blue North did not comply with Fed.R.Civ.P. 11(c)(1)(A), which requires that a motion for sanctions under Rule 11 shall be made separately from other motions or requests. Further, Blue North contends that plaintiff's indicated that he had located a putative witness who might testify at deposition that the wire that shocked plaintiff was old in appearance; and that counsel did not want to dismiss the claims against Blue North until that witness was deposed. Dkt. 50, at 3. At this point, Blue North has not shown that Rule 11 sanctions, even if properly filed, would be warranted. Blue North's request for costs and fees for defending this case should be denied.

1
2  Therefore, it is hereby

3  **ORDERED** that Defendant Blue North, Inc.'s Motion for Summary Judgment of Dismissal (Dkt.
4  49) is **GRANTED**. All claims against Blue North, Inc. Are **DISMISSED WITH PREJUDICE**. Blue
5  North's request for fees and costs (Dkt. 49) is **DENIED WITHOUT PREJUDICE**.

6  The Clerk is directed to send uncertified copies of this Order to all counsel of record and to any
7  party appearing *pro se* at said party's last known address.

8  DATED this 17th day of July, 2009.

9
10  Robert J. Bryan
11  United States District Judge